UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHAD ROMERO, individually and for others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 19-mc-91493-PBS |
| v. | ) ) | |
| SMITH MANAGEMENT AND CONSULTING, LLC, | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO ENFORCE SUBPOENA
[Docket No. 1]

March 4, 2020

Boal, M.J.

Chad Romero moves to compel third party Smith Management and Consulting, LLC ("Smith") to comply with a subpoena. Docket No. 1.[1] For the following reasons, I grant the motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     The Underlying Action

    1.     Romero's Allegations

On September 13, 2018, Romero filed a second amended complaint against Clean Harbors Surface Rentals USA, Inc. ("Clean Harbors"), alleging violations of the Fair Labor Standards Act ("FLSA"). Romero v. Clean Harbors Surface Rentals USA, Inc., No. 18-cv-10702-PBS (D. Mass.) (the "Underlying Action") at Docket No. 26. Romero worked for Clean

---

[1] Judge Saris referred the motion to the undersigned on November 7, 2019. Docket No. 6.

1

Harbors from July 2016 to February 2018. Second Amended Complaint in the Underlying Action ("SAC") at ¶ 9. He was a solids control technician, operating Clean Harbors' equipment to separate particles and debris from fluids used for oil and natural gas drilling so the fluids could be reused in the drilling process. Id. at ¶ 23.

Romero alleges he and other similarly situated individuals regularly worked over 40 hours per week. Id. at ¶¶ 49-51. However, Clean Harbors did not pay overtime to Romero or others similarly situated. Id. at ¶ 47. Instead, Clean Harbors paid them a "day rate." Id. at ¶ 43. Romero was paid $275 per day when he started working for Clean Harbors and $325 per day by the time he left, regardless of how many hours he worked. Id. at ¶¶ 44-45. Romero and other day-rate workers often worked 12 hours per day, seven days a week, or at least 84 hours per week. Id. at ¶¶ 50-51. Romero alleges that Clean Harbors misclassified him and other day-rate workers as independent contractors and failed to pay overtime in violation of the FLSA. Id. at ¶¶ 73-76.

2. Conditional Certification Of Collective Action Group And Notice

On March 21, 2019, Judge Saris conditionally certified a collective action group consisting of:

> All solids control workers employed by, or working on behalf of, Clean Harbors during the past 3 years who were classified as independent contractors and paid a day rate.

Underlying Action at Docket No. 53 at 21-22. Clean Harbors subsequently moved for clarification of the March 2019 order, requesting that the Court expressly state that any solid control workers who signed arbitration agreements are not part of the collective action group and will not receive notice of the FLSA collective action nor will they be allowed to opt-in to the action. Underlying Action at Docket No. 59. Clean Harbors also requested a protective order

prohibiting Romero from inquiring as to the names and contact information of any such solids control workers. Id. In the alternative, Clean Harbors requested that the Court stay the case and certify to the First Circuit the legal question of whether putative group members who signed arbitration agreements can receive notice in an FLSA collective action. Docket No. 60 at 2.

Judge Saris found that the collective action group excludes solids control workers subject to valid, enforceable arbitration agreements. See Underlying Action at Docket No. 78 at 5. Therefore, she revised the group definition to:

> All Solids Control Technicians employed by, or working on behalf of, Clean Harbors during the past 3 years who were classified as independent contractors and paid a day rate, excluding any Solids Control Technicians who are bound by an enforceable arbitration agreement.

Id. However, she also found that workers who signed arbitration agreements ("Arbitration Workers") should receive notice of the collective action even though they ultimately may not be able to participate in the case because of their arbitration agreements. Id. at 9. In so doing, Judge Saris discussed the Fifth Circuit's decision in In re JP Morgan Chase & Co., 916 F.3d 494 (5th Cir. 2019), which held "that district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." Id. at 7. She then noted that Clean Harbors had submitted three sample Consulting Agreements, a sample Master Service Agreement ("MSA"), a sample Arbitration Agreement, and an affidavit averring that the sample MSA and Arbitration Agreements were representative of those signed by other Arbitration Workers. Id. at 10. She found, however, that Clean Harbors' submission had not established by a preponderance of the evidence that the Arbitration Agreements for all 136 Arbitration Workers are valid. Id.

Judge Saris also noted that Romero had no way of meaningfully contesting the validity of

the Arbitration Agreements because he did not yet know the identity of any of the Arbitration Workers or the circumstances in which they signed Arbitration Agreements. Id. at 10-11. In addition, it was not clear that Romero had standing to contest the validity of the Arbitration Agreements for Arbitration Workers who had not yet opted into the action. Id. at 11. Finally, she noted that the Court lacked authority to adjudicate the validity of the Arbitration Agreements, as such questions were reserved for arbitration. Id.

Thus, Judge Saris held that she would not exclude Arbitration Workers from receiving notice of the collective action. Id. She also denied Clean Harbors' request for a protective order and to stay the action and certify it for interlocutory review. Id. at 11, 14. She stated that:

> The more sensible approach is for Plaintiff to send notice to the Arbitration Workers who were paid a day rate. Any that wish to join this action may challenge the validity and/or enforceability of their Arbitration Agreements through individualized arbitration proceedings. If their agreements are found to be either invalid or unenforceable, they may then join the collective action. Otherwise, the Arbitration Workers must pursue any FLSA claims through arbitration. Clean Harbors will be free to move to compel arbitration or seek other appropriate relief should any of the Arbitration Workers join the collective action without first arbitrating the validity and enforceability of their Arbitration Agreements. To this end, the parties have submitted a revised, agreed-upon notice form that clarifies that solids control workers with enforceable arbitration agreements will not be allowed to join the collective action. The Court approves the revised notice form.

Id. at 12.

2. The Present Dispute

Clean Harbors contracts with third-party staffing companies to supply solids control workers for certain projects. See Underlying Action at Docket No. 78 at 2. One of the third-party staffing companies is Smith. Id.

Clean Harbors contends that it does not have access to the contact information of the 136 solids control workers supplied by Smith and it is therefore unable to aid in getting those workers

notice as required by Judge Saris's order.  See Docket No. 1 at 1-2.  Thus, on May 6, 2019, Romero served a subpoena on Smith seeking the following:

1. For all solids control workers YOU paid a day rate and staffed to CLEAN HARBORS, its subsidiaries, or related entities from April 11, 2015 to present, produce in an electronic format (such as excel) the: (a) the names of the workers; (b) dates of employment of the workers; (c) each worker's last known mailing address; and (d) each worker's personal email addresses and personal telephone numbers.  If electronic means are not available, produce all DOCUMENTS which provide this information.

2. For all solids workers YOU paid a day rate and staffed to CLEAN HARBORS, its subsidiaries, or related entities from April 11, 2015 to the present, produce in electronic format (such as excel) the: (a) the payroll data for each solids control workers; and (b) the timesheets for each solids control worker.  If electronic means are not available, produce all DOCUMENTS which provide this information.

3. Produce all MSAs and other DOCUMENTS describing the relationship between YOU and CLEAN HARBORS applicable during the RELEVANT TIME PERIOD.

Docket No. 1-2 at 2-3.  Smith objected to the subpoena.  Docket No. 1-2.  Among other things, Smith argued that these requests sought irrelevant information because the requests failed to exclude solids control workers who are subject to arbitration agreements.  See id.

On October 30, 2019, Romero filed a motion to enforce the subpoena, or in the alternative, to transfer the matter to this Court in the U.S. District Court for the Southern District of Texas.  Romero v. Smith Management and Consulting, LLC, No. 4:19-mc-3240 (S.D. Tex.).  Judge Vanessa D. Gilmore transferred the motion to this Court pursuant to Rule 45(f) of the Federal Rules of Civil Procedure.[2]  Docket No. 2.[3]

---

[2] Rule 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

[3] On October 15, 2019, Smith also received a Rule 30(b)(6) Notice of Deposition and Subpoena Duces Tecum seeking testimony and documents regarding some of the same information as well

On November 15, 2019, Smith filed an opposition to the motion. Docket No. 7. I heard oral argument on December 18, 2019.

II.  ANALYSIS

    A.  Magistrate Judge's Authority To Rule On The Motion

Although a motion to quash is a usually a non-dispositive matter, judges in this district have held that motions to enforce or quash administrative subpoenas are dispositive motions for purposes of review because they are the entire proceeding before the court. See, e.g., In re Administrative Subpoena Blue Cross Blue Shield of Massachusetts, Inc., 400 F. Supp. 2d 386, 389 (D. Mass. 2005) (Saris, J.). Some courts have extended that holding to motions to quash Rule 45 subpoenas issued in out-of-district litigation. See, e.g., Luppino v. Mercedes-Benz Fin. Servs., USA, LLC, No. 13-50212, 2013 WL 1844075, at *3 (E.D. Mich. Apr. 11, 2013) (citations omitted). I disagree with those courts.

An administrative subpoena typically is directed at a single entity or person and seeks to obtain specific information relevant to an investigation. United States v. Michigan Dept. of Community Health, No. 1:10-mc-109, 2011 WL 2412602, at * 6 (W.D. Mich. June 9, 2011).

---

as additional information. See Docket No. 7 at 2-3. Smith filed a motion for a protective order in the U.S. District Court for the Southern District of Texas on November 1, 2019. In re Smith Management and Consulting, LLC, No. 4:19-mc-3268 (S.D. Tex.). On November 14, 2019, Judge Lynn N. Hughes granted the motion for a protective order. Docket No. 7-1 at 2. Romero has appealed that decision.

Smith has moved to stay the proceedings in this Court pending the appeal before the U.S. Court of Appeals for the Fifth Circuit. Docket No. 17. I deny the motion to stay. Among other things, I note that the motion pending before this Court was filed first and transferred here on October 31, 2019, two weeks before Judge Hughes' issued his order quashing the subpoena. At oral argument, Smith acknowledged that it never informed Judge Hughes of Judge Gilmore's order transferring the motion to enforce to this Court. In addition, Smith has provided no authority for the proposition that Judge Hughes' order takes precedence or is otherwise binding on this Court.

"The judicial proceeding to enforce the subpoena typically involves only the government agency seeking to enforce the subpoena and the person or entity in possession of the records." Id. Thus, there is no other proceeding pending in any court.

Unlike administrative subpoenas, Rule 45 subpoenas allow parties to obtain discovery from non-parties in civil proceedings pending before a federal court. To protect non-parties not residing in the jurisdiction where the action is pending, Rule 45 provides for enforcement in the place of compliance, which is generally the non-party's local court. See Fed. R. Civ. P. 45(c), (d); Advisory Committee Notes to 2013 Amendments. While in some instances subpoena related motions are the only proceeding pending before one court, they are part of a larger proceeding that happens to be pending in a different court.[4] Thus, a court's ruling on a motion to quash a Rule 45 subpoena is a discovery matter not dispositive of the underlying claims. See, e.g., Cadence Pharmaceuticals, Inc. v. Multisorb Tech., Inc., No. 16MC22G, 2016 WL 4267567, at *4 (W.D.N.Y. Aug. 15, 2016) ("[I]n ruling on whether to transfer subpoena-related motions, the Court is not depriving a party of a federal forum to resolve a dispute but is rather transferring the authority to resolve the discovery dispute to another federal court.") (citation omitted). Accordingly, I find that the instant motion to quash is a non-dispositive matter that this Court may consider under 28 U.S.C. § 636(b)(1)(A).

B.    Compliance With Subpoena

Smith argues that the information sought by the subpoena is not relevant because it pertains to Arbitration Workers and such workers are explicitly excluded from the conditionally certified class and should therefore not receive notice of the action. See Docket No. 7 at 5-10.

---

[4] In this case, the underlying matter is also pending before this Court because although the responding party is a citizen of Texas, the Texas court transferred the matter here pursuant to Rule 45(f) of the Federal Rules of Civil Procedure.

Judge Saris, however, has already rejected that argument and held that Arbitration Workers should receive notice of the action even if they ultimately may not be able to join the class. See Underlying Action at Docket No. 78 at 6-12. Smith is in effect asking for reconsideration of that ruling. See Docket No. 7 at 6-10. It is not clear I have the authority to disturb Judge Saris's ruling and, in any event, I see no reason to recommend that Judge Saris reconsider her decision. Thus, Request No. 1, requesting contact information for the Arbitration Workers, seeks relevant information.

Request No. 2, regarding payroll data and timesheets, seeks information relevant to determining whether workers were paid a day rate.[5] Similarly, MSAs and other documents describing the relationship between Smith and Clean Harbors may also shed light on that issue.[6]

To the extent that Smith objects to producing the requested information on the grounds that such information is confidential, Judge Saris has issued a Confidentiality and Protective Order to protect confidential information. See Underlying Action at Docket No. 63. Smith may designate documents as confidential pursuant to that order. See id. at ¶ 5.

---

[5] Smith states that "no responsive documents exist because no solids control workers staffed to CLEAN HARBORS, its subsidiaries, or related entities from April 11, 2015 to the present were paid a 'day rate.'" Docket No. 1-2 at 3. As there is a dispute between the parties regarding whether in fact solids control workers staffed to Clean Harbors were paid a day rate, Romero is entitled to discovery on that issue.

[6] At oral argument, with respect to Request No. 3, the parties informed the undersigned that MSAs had been produced but that they had been redacted. I find that Romero is entitled to unredacted copies of the MSAs.

III. ORDER

For the foregoing reasons, I grant Romero's motion to enforce. Smith shall comply with the subpoena within 30 days.

                                                /s/ Jennifer C. Boal
                                                JENNIFER C. BOAL
                                                UNITED STATES MAGISTRATE JUDGE